Richard W. Drumm, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs February 3, 1983, to President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*David W. Pickens,* for petitioner.

*Charles G. Hasson,* Assistant Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., July 13, 1983:

Richard Drumm has appealed from the decision and order of the Unemployment Compensation Board of Review denying his claim for benefits pursuant to Section 3 of the Unemployment Compensation Law.[1]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §752. This section provides in pertinent part:

> Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed *through no fault of their own* ... The Legislature, therefore, declares that in its considered judgment the public good ... require[s] ... the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own.* (Emphasis added.)

This provision has been held to have substantive effect and application. *Wilson v. Unemployment Compensation Board of Review,* 58 Pa. Commonwealth Ct. 531, 428 A.2d 288 (1981); *Strokes v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 584, 372 A.2d 485 (1977), *aff'd per curiam,* 487 Pa. 448, 409 A.2d 854 (1980).

The competent evidence in the record paints the following factual scenario.

The claimant was employed for approximately seven years as a machine operator at Anchor Hocking Corporation. On December 16, 1980, he was placed on temporary lay-off due to lack of work. He was entitled to recall in accordance with the terms of the collective bargaining agreement between the claimant's union and the employer. Furthermore, he would have been recalled except for his being involuntarily placed on an indefinite personal leave-of-absence by his employer effective January 19, 1981.

The impetus for the employer placing the claimant on indefinite leave was a newspaper article published on January 16, 1981 which reported that the claimant had that morning been arrested on morals charges. The claimant's employer was not identified in the article. The employer had no first-hand knowledge of the incident which was the basis for the arrest. According to the employer's testimony, the reason for placing the claimant on a leave of absence was to protect against the possibility that the claimant might suffer harassment from co-workers if he returned to work, or that production might be affected by the attention the claimant might draw within the plant. While the employer representative testified to comments made to her by three employees concerning their reaction to the charges against the claimant, there was no evidence of threats of violence against the claimant or of disruption at the plant if the claimant returned to work.

The claimant did not admit the charges made against him. However, a magistrate found prima facie evidence to support the charges, and accordingly bound the case over for presentation to the grand jury. At the time of the referee's hearing, there had been no disposition of the charges, and the final disposition is not reflected in the record.

On this factual history, the Board affirmed a decision of the referee that the claimant's unemployment was due to his own fault by virtue of his arrest on morals charges. This decision was based on a finding that due to the nature of the charges, the employer was of the opinion that the claimant would be unable to perform his job duties. Furthermore, the referee reasoned that the claimant's actions had allowed adverse publicity to reflect on the employer. For the reasons which follow, we hold that the Board's decision was erroneous, and that benefits should be allowed.

First, with regard to our scope of review in this case, we are limited to determining whether the factual findings on which the Board's decision is based are supported by substantial evidence, and whether there has been an error of law or showing of fraud. *Lake v. Unemployment Compensation Board of Review*, 48 Pa. Commonwealth Ct. 138, 409 A.2d 126 (1979). In pursuit of that authority, we have carefully reviewed the record and find no evidentiary support for the referee's conclusion that the employer suffered adverse publicity from the reports of the claimant's arrest. There is no evidence that the employer was identified in any of the media reports. Moreover, the claimant, a machine operator, did not hold the type of position with the company which would lead to an inference that the public would impute the taint of any wrongdoing by him to the company itself. While there is evidence that three of the claimant's co-workers commented to the employer about the arrest, there is nothing in the record to suggest that there was any outsider who knew of the employment relationship between the claimant and the company, and whose impression of the company was adversely affected by knowledge of the charges against the claimant.

Additionally, we conclude that the Board erred in determining that the record reflects a sufficient nexus between the conduct attributed to the claimant and his ability to perform his job. In *Unemployment Compensation Board of Review v. Derk*, 24 Pa. Commonwealth Ct. 54, 57, 353 A.2d 915, 917 (1976), a case in which a part-time school bus driver was arrested for a morals offense allegedly committed while off-duty, we held that:

> In order to deny compensation under Section 3 of the Act, more is needed than mere evidence of an *arrest* for a crime. The employer must present some evidence showing conduct of the claimant leading to the criminal arrest which is inconsistent with acceptable standards of behavior and which *directly* reflects upon his ability to perform his assigned duties. (Emphasis in original.)

*See Adams v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 486, 397 A.2d 861 (1979). We are unable to find in this record any concrete evidence that the claimant's alleged conduct would directly affect his ability to perform his job.[2] There is nothing in the nature of the job itself which would suggest incompatibility with the behavior with which he was charged. *Compare D'Iorio v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 443, 400 A.2d 1347 (1979) (Claimant's conduct was deemed inconsistent with the sensitive nature of his job); *Strokes v. Unemployment Compen-*

---

[2] Because we conclude that the conduct with which the claimant was charged has not been shown to reflect directly on his ability to perform his job, we express no view as to whether the second-hand reports received and testified to by the employer were sufficient to satisfy the requirement in *Unemployment Compensation Board of Review v. Derk*, that the employer present some evidence of unacceptable behavior by the claimant.

*sation Board of Review*, 29 Pa. Commonwealth Ct. 584, 372 A.2d 485 (1977), *aff'd per curiam*, 487 Pa. 448, 409 A.2d 854 (1980) (Truck driver lost license to operate motor vehicle). Moreover, the employer's suggestion that the claimant might be harassed or that production might be disrupted was purely speculative. Such speculation may be sufficient basis for the employer's internal personnel practices and decisions; it is not sufficient basis for a denial of unemployment compensation benefits. *See Anderson v. Unemployment Compensation Board of Review*, 57 Pa. Commonwealth Ct. 447, 426 A.2d 253 (1981); *Panaro v. Unemployment Compensation Board of Review*, 51 Pa. Commonwealth Ct. 19, 413 A.2d 772 (1980).

Accordingly, we reverse the decision of the Unemployment Compensation Board of Review and remand this case for computation of benefits.

ORDER

AND Now, this 13th day of July, 1983, the order of the Unemployment Compensation Board of Review at Decision No. B-196080 denying benefits to Richard W. Drumm, is reversed.